Anoush Hakimi (SBN 228858)
anoush@handslawgroup.com
Peter Shahriari (SBN 237074)
peter@handslawgroup.com
Laura Steven (SBN 332168)
laura@handslawgroup.com
**THE LAW OFFICE OF HAKIMI & SHAHRIARI**
1800 Vine Street
Los Angeles, CA 90028
Telephone: (888) 635-2250
Facsimile: (213) 402-2170

Attorneys for Plaintiff,
**TODD WILLIAMSON**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TODD WILLIAMSON, an individual,<br><br>        Plaintiff,<br><br>    v.<br><br>CA 1000 NORTH LA BREA, LLC, a California limited liability company; BLACK RUSH, LLC, a California limited liability company; and DOES 1-10,<br><br>        Defendants. | Case No.<br><br>**COMPLAINT FOR VIOLATIONS OF: AMERICANS WITH DISABILITIES ACT OF 1990, 42 U.S.C. § 12181, *et seq.*; UNRUH CIVIL RIGHTS ACT, CALIFORNIA CIVIL CODE § 51, *et seq.***<br><br><u>DEMAND FOR BENCH TRIAL</u> |

**Landlords demonize access cases and often deviously foist the overdue remediation costs onto business owners who lease their land, all the while protesting in litigation, tying up the Court. The secret is out.**

COMPLAINT

Plaintiff Todd Williamson (hereinafter referred to as "Plaintiff") complains of CA 1000 North La Brea, LLC, a California limited liability company; Black Rush, LLC, a California limited liability company; and Does 1-10 (each, individually a "Defendant," and collectively "Defendants"), and alleges as follows:

## I.  INTRODUCTION: THE CROSSROADS OF CIVIL RIGHTS AND PRIVATE INFRASTRUCTURE REFORM

The landlord community has demonized ADA lawsuits in order to avoid compliance with Federal law. Landlords often use heavy handed leases which unfairly and secretly foist the responsibility of access law compliance of *their* property onto the shoulders of the unfortunate business owner/lessor who does not see the landmine in the lease. Inevitable lawsuits by customers *against landlords who own the non-compliant property* asking for legally required features in the property are then mischaracterized as attacks on the unfortunate business owner/lessor by dastardly customers. This cynical and unfair tactic has caused administrative headaches for the courts which must deal with emotional and unnecessary litigation and has obscured the truth. In reality, the landlords' goal is to to save money by failing to bring the property into compliance and then when caught, blame the disabled customer and force the remediation costs upon the business owner. The landlord is the predator. Here are the facts:

Mass Non-Compliance with the ADA. Many places are dilapidated and need

COMPLAINT

remediation. Non-compliance is rampant. Many if not most places are not fully compliant with access laws. Many properties have terribly dilapidated pavement, vandalized or missing access signage, incorrectly designed paths and have restrooms which are unusable for disabled people. These problems are common and egregious in many places.

No Government Oversight. The government will not provide inspections or monitoring of the vast swaths of privately owned land and buildings used by people. Incorrectly designed features will stay non-compliant. Many features will also erode with time from long term heavy usage, weather/climate ware, vandalism, etc.

Private Infrastructure Reform. The remediation and improvement to these properties is good for business. Improvements which better the land and bring the property into compliance with Federal law increase the property value and make the areas more appealing for customers.

Remediation Costs are Tiny Compared to the Wealth of the Landlord.

The costs of remediation in many instances are a tiny fraction of the income of most landlords, who typically own multiple commercial properties and are in the landlord business. The landlord that owns one property is indeed a rare creature in California. The value of the building, improvements and land for most properties, coupled with other properties owned, dwarfs the negligible expenses of

remediation, which incidentally should have been made already without the need for a lawsuit. The lawsuit is an unfortunate byproduct of the landlord's original refusal to follow the law. The landlord saved and avoided those costs until the case.

Need for these cases. Despite the history of access cases there is still mass non-compliance. The deterrent effect has not been enough to bring about remediation such that these cases discontinue and are growing. Until the legislative intent arises to change the law so that government inspectors appear on the streets monitoring and enforcing access laws, these cases will be essential and important to giving access to all and to improving the landscape for all customers.

## II.   PARTIES

1.      Plaintiff Todd Williamson suffers from cerebral palsy.  He has great difficulty with mobility.  His posture, movement, and reflexes are impaired.  His upper body strength is impaired.  He relies on a walker for mobility and has great difficulty moving his body.  Plaintiff's cerebral palsy impairs his ability to walk, move, and interact with people and objects around him.   He is a disabled person entitled to the protections of the California Unruh Civil Rights Act (UCRA) (see Cal. Civ. Code §§ 51, et seq., 52, et seq.), the Americans with Disabilities Act (ADA) (see 42 U.S.C. § 12102, et seq.), and other statutory laws which protect the rights of "disabled persons."  Plaintiff has been issued a blue permanent Disabled Person Parking Placard, by the State of California.  Plaintiff is a California resident

with physical disabilities.

2.      Defendant CA 1000 North La Brea, LLC, a California limited liability company; Black Rush, LLC, a California limited liability company owned the property (the "Property"), located at 1000 N. La Brea Ave., Inglewood, CA 90302.

3.      There is a business establishment on the Property named "Pizza Hut," (hereinafter, "the business").

4.      The business is a public accommodation as defined by 42 U.S.C. § 12181(7).

5.      DOES 1 through 10 were at all relevant times lessors, lessees, property owners, subsidiaries, parent companies, affiliates, employers, employees, agents, corporate officers, managers, principles, and/or representatives of Defendants. Plaintiff is unaware of the true names and capacities of Defendants sued herein as DOES 1 through 10, inclusive, and, therefore, sues those Defendants by fictitious names.  Plaintiff requests that the Court grant leave to amend this complaint to allege the true names and capacities when determined by whatever source.

6.      Defendants, at all relevant times, were relevant to this action; were the owners, franchisees, franchisors, lessees, lessors, general partners, limited partners, agents, affiliates, employees, employers, representative partners, subsidiaries, partner companies, and/or joint venturers of the remaining Defendants; and were acting within the course and scope of that relationship.  Upon information and

COMPLAINT

belief, Plaintiff alleges that each of the Defendants gave consent to, ratified, and/or authorized the acts alleged of each of the remaining Defendants.

7.      Plaintiff visited the public accommodations owned, leased, and/or operated by Defendants with the intent to purchase and/or use the goods, services, facilities, privileges, advantages, and/or accommodations offered by Defendants.

### III.   JURISDICTION & VENUE

8.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3) & (a)(4) for violations of the ADA.

9.      Pursuant to supplemental jurisdiction, an attendant and related cause of action, arising from the same nucleus of operative facts, and arising out of the same transactions, is also brought under the UCRA, which expressly incorporates the ADA.

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the real property which is the subject of this action is located in this district, and Plaintiff's cause of action arose in this district.

### IV.   FACTS

11.     The Property is a facility which is open to the public and includes business establishments.

12.     The Property has been newly constructed and/or underwent remodeling, repairs, or alterations after January 26, 1992.  Defendants have failed

to comply with California access standards which applied at the time of each new

construction and/or alteration, and/or failed to maintain accessible features in

operable working condition.

13.     Plaintiff visited the Property during the relevant statutory period on

two (2) separate occasions, in June 2021 and July 2021 to patronize the business on

the Property.

14.     Defendants did not offer persons with disabilities with equivalent

facilities, privileges, and advantages offered by Defendants to other patrons.

15.     Plaintiff encountered barriers, both physical and intangible, that

interfered with, and denied, Plaintiff the ability to use and enjoy the goods, services,

privileges, and/or accommodations offered at the Property.

16.     Parking is one of the facilities, privileges, and advantages offered by

Defendants to patrons of the Property.

17.     However, there was no accessible parking for disabled patrons at the

Property.  The parking spaces designated for disabled persons did not comply with

the ADA.

18.     The parking area did not comply with the applicable California

Building Code (CBC).

19.     When Plaintiff visited the Property, he experienced access barriers

related to parking, signage, paths of travel, and restrooms.

COMPLAINT

20.     Plaintiff encountered the following barriers, conditions, and/or violations at the Property:

**The property which serves Pizza Hut has many violations of the ADAAG which are barriers to somebody like Plaintiff. There are major problems related to damaged and uneven surfaces. Some of the pavement distresses are from damage (such as cracks in the asphalt), some from bad design or installation (for example uneven pavement). The paint for the designated parking space and access aisle are so faded they are virtually invisible. The business lacks an accessible entry sign. There are problems inside of Pizza Hut also. There are many other problems as well.**

**VIOLATION of 1991 ADAS § 4.3.2(1); 2010 ADAS § 206.2.1; 2010 CBC § 1114B.1.2; 2019 CBC § 11B-206.2.1.** (Exterior route of travel.)  An accessible route of travel is not provided to all entrances and portions of the building, to all entrances of the Property, and/or between the building and a public way.  Plaintiff needs a dedicated path of travel, free of obstructions and vehicles, where (on which) Plaintiff can travel.  It is dangerous for Plaintiff to navigate without a safe, protected, accessible route of travel; thus, the violation interferes with Plaintiff's ability to fully access the premises.

COMPLAINT

**VIOLATION of 1991 ADAS §§ 4.1.2(1), 4.3.2(1); 2010 ADAS §§ 206.1, 206.2, 206.2.1, 206.2.2, 206.2.4; 2010 CBC § 1114B.1.2; 2010 CBC § 1127B.1; 2019 CBC §§ 11B-206.2.1, 11B-206.2.2, 11B-206.2.4.**

(Accessible route of travel.)  At least one accessible route shall be provided within the site from accessible parking spaces and accessible passenger loading zones; public streets and sidewalks; and public transportation stops to the accessible building or facility entrance they serve.  At least one accessible route shall connect accessible buildings, accessible facilities, accessible elements, and accessible spaces that are on the same site.  The requisite accessible route of travel is not provided.  There is no accessible route of travel from the designated disabled parking spaces, adjacent access aisle to the business/building entrance. Plaintiff needs an accessible route of travel, with level and smooth ground, free of obstructions and vehicles, whereupon Plaintiff can ambulate.  It is dangerous for Plaintiff to travel these areas without a safe, protected, accessible route of travel; thus, the violation interferes with Plaintiff's ability to fully access the premises.  The lack of a safe and accessible route, with a smooth and level surface, denied Plaintiff full and equal use or access during each of Plaintiff's visits by making it difficult/ harder for Plaintiff to traverse.

COMPLAINT

**VIOLATION of 2010 CBC § 1129B.4; 2019 CBC §§ 11B-502.8, 11B-502.8.2.**  (Off-street unauthorized parking sign – tow company information.) The tow away sign(s) (signs stating that "UNAUTHORIZED VEHICLES PARKED IN DESIGNATED ACCESSIBLE SPACES … WILL BE TOWED AWAY") do(es) not state the required information regarding the tow company address and telephone number.  Plaintiff must use the designated disabled parking spaces and requires the proper protections of an access aisle and an accessible route of travel to safely access the Property. Clear signage that explicitly warns of the consequences for improperly parking in the designated disabled parking spaces will deter others without disabilities from parking there.

**VIOLATION of 1991 ADAS § 4.6.4; 2010 CBC § 1129B.4; 2019 CBC § 11B-502.6.3.**  (Sign improperly located.)  A designated disabled parking space identification sign shall be visible from each designated disabled parking space.  Signs shall be permanently posted either immediately adjacent to the parking space, or within the projected parking space width at the head end of the parking space.  Here it was not. This makes it difficult for Plaintiff and other patrons to identify or locate the designated disabled parking space.  Plaintiff needs to park in the space that is nearest to the

business entrance and designated for disabled patrons.  Plaintiff needs to be able to use an accessible parking space, with an access aisle, to safely access the Property.  A properly placed designated disabled parking space identification sign will (better) deter others without disabilities from parking in the space; and will thus decrease the chances that Plaintiff will be blocked from being able to use it.

**VIOLATION of 1991 ADAS § 4.3.7; 2010 ADAS § 403.3; 2019 CBC § 11B-403.3.**  (Route/path of travel – cross slopes.)  The cross slopes of the route/path of travel are greater than two percent (2%).  It is difficult for Plaintiff to travel on surfaces with excess slopes.  Plaintiff is at risk of falling when there are surfaces with excess slopes.  The presence of excess slopes denied Plaintiff full and equal use or access during Plaintiff's visits by making it difficult and/or uncomfortable for Plaintiff to traverse the property/route.  The barrier also deterred/deters Plaintiff from visiting the Property because it would make it difficult and/or uncomfortable for Plaintiff to walk/traverse the property/route.

**VIOLATION of 1991 ADAS §§ 4.5.2, 4.6.8; 2010 ADAS §§ 302.1, 303.1, 303.2, 303.3, 303.4; 2010 CBC §§ 1120B.2, 1133 B.7.1, 1133B.7.4; 2019**

**CBC §§ 11B-303.1, 11B-303.2, 11B-303.3, 11B-303.4, 11B-303.5**.  (Abrupt changes in level; uneven ground surface.)  Floor and ground surfaces shall be stable, firm, and slip resistant.  Changes in level of 1/4 inch high maximum shall be permitted to be vertical and without edge treatment.  Changes in level between ¼-inch high minimum and ½-inch high maximum shall be beveled with a slope not steeper than 1:2. Changes in level greater than 1/2 inch high shall be ramped.  The route of travel, including from the designated disabled parking space to the entrance of the building/business, have an uneven ground surface with changes in level exceeding one-half inch (1/2") (and no ramps are provided).  The route of travel has damaged ground which is not flush or flat.  The ground has pavement distresses.  The types of pavement distresses which exist include but are not limited to: alligator (fatigue) cracking; joint reflection cracking; raveling; stripping; corrugation and shoving; and depressions.  These pavement distresses are made worse and exacerbated by design elements which do not follow the ADAAG. These areas should be fixed immediately because they pose a tripping and/or falling hazard.  Plaintiff, a cannot safely and fully enjoy the premises when such conditions are present.  These excess changes in level and uneven ground surfaces pose risks to Plaintiff, including that Plaintiff's foot, may catch on the uneven ground causing Plaintiff to fall.  These abrupt changes in

level pose an increased risk of danger to Plaintiff, as Plaintiff is more likely to trip/fall than someone without disabilities.  The excess changes in level (i.e., uneven ground) denied Plaintiff full and equal use or access during each of Plaintiff's visits by making it difficult/harder and more dangerous for Plaintiff to traverse the property/route.  The excess changes in level (i.e., uneven ground) also deterred/deters Plaintiff from visiting the Property because it would be difficult/harder and more dangerous for Plaintiff to traverse the property/route.

**VIOLATION of 2010 CBC § 1133B.7.1; 1991 § ADAS § 4.3.8.**  (Walks/ sidewalks – changes in level.)  The walk leading into the business does not have a continuous common surface because there are abrupt changes in level of more than one-half inch (1/2").  Plaintiff cannot fully enjoy the premises because these conditions pose a risk that, among other things, Plaintiff may fall and/or that Plaintiff's foot may become trapped in an uneven surface.

**VIOLATION of 1991 ADAS § 4.6.3; 2010 ADAS § 502.2.; 2010 CBC §§ 1129B.3, 1129B.4; 2019 CBC §§ 11B-502.2, 11B-502.6.4.1, 502.6.4.2.** (Faded paint – accessible parking space lines.)  The paint used for the designated disabled parking space is so worn and aged that it cannot (can

hardly) be seen.  This makes it unclear where the actual designated disabled

parking space is, and it makes it difficult for Plaintiff to use the space.

Plaintiff needs to be able to use the designated disabled parking space, which

should be located closest to the entrance and linked to an accessible route of

travel, because it is more difficult for Plaintiff as opposed to non-disabled

persons, to maneuver about the Property.  When the paint for the designated

disabled parking space is worn and aged, there is a greater risk that non-

disabled patrons will park in the designated disabled parking space,

preventing Plaintiff from using it and accessing the business.


**VIOLATION of 2010 ADAS § 502.2; 2010 CBC § 1129B.3; 2019 CBC §**

**11B-502.2.**  (Length of designated disabled parking space.)  The designated

disabled parking space measures/measured less than eighteen feet (18') long,

which made (would make) it difficult for Plaintiff to use the designated

space, and which denied (would deny) plaintiff full and equal use and access

of the full length of the required space.  The paint used for the accessible

parking space lines are so faded and worn that it is difficult to identify the

actual dimensions of the space. Plaintiff cannot safely park and disembark

from the vehicle when adequate space is not provided.  Plaintiff needs to be

able to use the designated disabled parking space, which should be located

closest to the entrance and linked to an accessible route of travel, because it is more difficult for Plaintiff, as opposed to non-disabled persons, to maneuver about the Property.

**VIOLATION of 1991 ADAS § 4.6.3; 2010 ADAS § 502.3.2; 2010 CBC § 1129B.3; 2019 CBC § 11B-502.3.2.**  (Length of adjacent access aisle.)  The access aisle adjacent to the designated disabled parking space is/was less than eighteen feet (18') long (which is also the required length of the designated disabled parking space), which denied (would deny) plaintiff full and equal use and access of the full length of the required access aisle.  Plaintiff needs extra space to be able to safely exit the vehicle. When the access aisle is too small, Plaintiff has difficulty disembarking from the vehicle, which poses a greater risk of injury to Plaintiff and can also cause humiliation and/or frustration.

**VIOLATION of 1991 ADAS § 4.6.3; 2010 ADAS § 502.4; 2016 CBC §§ 11B-502.4, 11B-502.3.3; 2010 CBC § 1129B.3.4.**  (Slope of designated disabled parking spaces.)  The designated disabled parking spaces have slopes and cross slopes that are greater than two percent (2%).  Given Plaintiff's mobility issues, Plaintiff needs to be able to traverse on a level

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

surface.  Sloped ground surfaces pose risks to Plaintiff, including that Plaintiff's feet may catch on the sloped ground, causing Plaintiff to fall.

**VIOLATION of 1991 ADAS § 4.6.3; 2010 ADAS § 502.4; 2010 CBC § 1129B.3.3; 2019 CBC § 11B-502.4.** (Slopes of adjacent access aisle.)  The loading/unloading access aisle adjacent to the designated disabled parking spaces has surface slopes greater than two percent (2%).  Given Plaintiff's mobility issues, Plaintiff needs to be able to traverse on a level surface. Sloped ground surfaces pose risks to Plaintiff, including that Plaintiff's feet may catch on the sloped ground, causing Plaintiff to fall.

**VIOLATION of 2010 CBC § 1129B.4; 2019 CBC § 11B-502.6.4.** (Parking space ground surface signage/International Symbol.)  The paint used for the designated disabled parking space is faded and cannot (can hardly) be seen; thus, there is no compliant surface signage at the designated disabled parking space.  The International Symbol of Accessibility is so faded and worn that it can hardly be seen.  This makes it difficult for Plaintiff and other patrons to identify or locate the designated disabled parking space.  When the paint for the International Symbol of Accessibility is so faded and worn, there is a greater risk that non-disabled patrons will

COMPLAINT

park in the designated disabled parking space, preventing Plaintiff from using it and accessing the business.  Plaintiff needs to be able to park in the space that is nearest to the entrance and designated for disabled patrons. Plaintiff needs to be able to use an accessible parking space, with an access aisle, to safely access the Property.  Clear surface signage that explicitly marks the designated disabled parking space will deter others without disabilities from parking in the space, so that the space can be available for Plaintiff's use.

**VIOLATION of 2010 ADAS § 502.3.3; 2010 CBC § 1129B.3.1; 2019 CBC § 11B-502.3.3.**  (<u>"NO PARKING" – ground surface signage.</u>)  The words "NO PARKING," which are required to be painted in the loading/ unloading access aisle, were/are missing (and/or were completely faded such that the words were no longer visible).  As a result, non-disabled patrons parked in the loading/unloading access aisle, blocking Plaintiff from being able to use the access aisle.  Plaintiff needs extra space to be able to safely exit the vehicle. Plaintiff has difficulty disembarking the vehicle, which poses a greater risk of injury to Plaintiff and can cause humiliation and/or frustration.  Plaintiff cannot access the Property safely if Plaintiff cannot use an accessible parking space and adjacent access aisle.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**VIOLATION of 1991 ADAS §§ 4.3.8, 4.5.2; 2010 ADAS §§ 302.1, 303.2, 303.3, 303.4, 403.2; 2010 CBC §§ 1133B.7.1, 1133B.7.4; 2019 CBC §§ 11B-302.1, 11B-303.2, 11B-303.3, 11B-303.4, 11B-403.2.** <u>(Changes in level – designated disabled parking space.)</u>  There are excess changes in level (of more than one-half inch) within the parking spaces reserved for disabled patrons.  The asphalt is uneven, and has depressions, dips, and divots.  The ground has sunken and cracked parts.  This makes travelling in this area difficult.  These excess changes in level and uneven ground surfaces pose risks to Plaintiff, including that Plaintiff may fall.

**VIOLATION of 1991 ADAS §§ 4.3.7, 4.8.1; 4.8.4(2), 4.8.4(3); 2010 ADAS § 403.3; 2010 CBC §§ 1133B.5.4.2, 1133B.5.4.6; 2019 CBC § 11B-403.3.** <u>(Excess slopes; no compliant ramp.)</u>  The route(s) of travel has/have slopes greater than 1:20 (5%), but there is no compliant ramp (with appropriate level ramp landings at the top and bottom of each ramp).  It is difficult for Plaintiff to walk on sloped surfaces that do not provide the safety features of a compliant ramp.  These excess changes in level pose risks to Plaintiff, including that Plaintiff may fall. The lack of a complaint ramp, with its attendant safety/accessibility features, denied Plaintiff full and equal use or

access during his visits by making it difficult/harder for Plaintiff to traverse the property/route.

**VIOLATION of 2010 ADAS § 216.6, 1991 ADAS § 216.6, 2016 CBC § 11B-216.6.** (Accessible entrance.) In buildings where not all entrances are accessible, the entrance(s) that are accessible and usable by persons with disabilities must be identified. There is no International Symbol of Accessibility at the front entrance. There is no directional signage at inaccessible entrances to indicate the route to the nearest accessible entrance.

**VIOLATION of 2010 CBC § 1122B.5;1991 ADAS § 7.2; 2010 ADAS § 904.** (Transaction counters.) There is no lowered counter that is free and clear of clutter for disabled persons whose line of sight is lower. There was no lowered, thirty-six (36) inches or less, transaction counter for use by persons who cannot see high surfaces because of their disability. Without a lowered transaction counter, it is difficult for Plaintiff to use the counter to conduct business at the Property.

21.     Plaintiff personally encountered the foregoing barriers, conditions, and/or violations.

22.     These barriers, conditions, and/or violations denied Plaintiff full and

equal access, and caused him difficulty, humiliation, and/or frustration.

23.     The barriers, conditions, and/or violations existed during each of Plaintiff's visits in 2021.

24.     Defendants knew that the foregoing architectural barriers prevented access.  Plaintiff will prove that Defendants had actual knowledge that the architectural barriers prevented access, and that the noncompliance with the ADA Standards for Accessible Design (ADAS), ADA Accessibility Guidelines for Buildings and Facilities (ADAAG), and/or the California Building Code (CBC) was intentional.

25.     Plaintiff intends and plans to visit the Property again soon.  Currently, Plaintiff is reasonably deterred from returning to Defendants' public accommodation facilities because of the knowledge of barriers to equal access, relating to Plaintiff's disabilities, that continue to exist at the Property.

26.     Defendants have failed to maintain in working and useable condition those features necessary to provide ready access to persons with disabilities.

27.     Defendants have the financial resources (i.e., financial ability) to remove these barriers without much expense or difficulty in order to make the Property more accessible to their mobility impaired customers (i.e., disabled persons).  The removal of these barriers is readily achievable.  The United States Department of Justice has determined that removal of these types of barriers is

readily achievable.

28.     Defendants refuse to remove these barriers.

29.     On information and belief, Plaintiff alleges that Defendants' failure to remove these barriers was/is intentional, because the barriers are logical and obvious.  During all relevant times, Defendants had authority, control, and dominion over these conditions.  Thus, the absence of accessible facilities was/is not a mishap; it was/is the result of intentional actions or inaction.

30.     These barriers to access are described herein without prejudice to Plaintiff citing additional barriers to access after further inspection by Plaintiff's agents and/or experts.  *See Doran v 7-ELEVEN, Inc.,* 524 F.3d 1034 (9th Cir. 2008) (holding that once a plaintiff encounters one barrier at a site, a plaintiff can sue to have all barriers that relate to his or her disability removed, regardless of whether he or she personally encountered them).

## IV. FIRST CAUSE OF ACTION:  VIOLATION OF THE

## AMERICANS WITH DISABILITIES ACT OF 1990

## (42 U.S.C. § 12101, *et seq*.)

(Against All Defendants)

31.     Plaintiff alleges and incorporates by reference each and every allegation contained in all prior paragraphs of this complaint.

32.     Title III of the ADA prohibits discrimination against any person on the

basis of disability in the full and equal enjoyment of the goods, services, facilities,
privileges, advantages, or accommodations of any place of public accommodation
by any person who owns, leases, or operates a place of public accommodation. 42
U.S.C. § 12182(a).

33.    Defendants discriminated against Plaintiff by denying him "full and
equal enjoyment" and use of the goods, services, facilities, privileges, and/or
accommodations they offered during each visit, and each incident of a deterred
visit.

34.    The acts and omissions of Defendants herein were/are in violation of
Plaintiff's rights under the ADA and the regulations codified at 28 C.F.R. Part 36,
*et seq.*

35.    Pursuant to the ADA, discrimination is a "failure to make reasonable
modifications in policies, practices or procedures, when such modifications are
necessary to afford goods, services, facilities, privileges, advantages or
accommodations to individuals with disabilities, unless the entity can demonstrate
that making such modifications would fundamentally alter the nature of such goods,
services, facilities, privileges, advantages or accommodations." 42 U.S.C. §
12182(b)(2)(A)(ii).

36.    The ADA requires removal of architectural barriers in existing
facilities where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv)

("discrimination includes … a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities, … where such removal is readily achievable").  The term "readily achievable" is defined as "easily accomplishable and able to be carried out without much difficulty or expense."  42 U.S.C. § 12181(9).  Barriers are defined by reference to the ADA Standards for Accessible Design (ADAS), found at 28 C.F.R. Part 36, including the ADA Accessibility Guidelines for Buildings and Facilities (ADAAG), at Part 36, Appendix A.

37.    If removal of any barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also prohibited if the alternative methods are readily achievable.  42 U.S.C. § 12182(b)(2)(A)(v).

38.    Defendants can remove the architectural barriers at their facility without much difficulty or expense.  Defendants violated the ADA by failing to remove the barriers because removal was readily achievable.  For instance, there are companies which can repaint parking areas for as little as $350.  Defendants can afford such costs, which are a fraction of what Defendants receive in (rental or business) profits in connection with such a large and expensive property.

39.    Alternatively, if it was not "readily achievable" for Defendants to remove barriers at their facilities, Defendants violated the ADA by failing to make

their services available through alternative methods which are readily achievable.

40.     On information and belief, Plaintiff alleges that the facility was altered after January 26, 1992, mandating compliance with accessibility requirements under the ADA.

41.     The ADA requires that facilities altered in a manner that affects or could affect their usability must be made readily accessible to individuals with disabilities to the maximum extent feasible.  42 U.S.C. § 12183(a)(2).

42.     Defendants altered the facilities at the Property in a manner that violated the ADA, and/or failed to make the Property readily accessible to physically disabled persons to the maximum extent feasible.

43.     The ADA also requires reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations.  42 U.S.C. § 12182(b)(2)(A)(ii).

44.     Defendants violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Property when these modifications were necessary to afford (and would not fundamentally alter the nature of) the goods, services, facilities, privileges, advantages, or accommodations.

COMPLAINT

45.     Plaintiff seeks a finding from this Court that Defendants violated the ADA, so that he may pursue damages under California's Unruh Civil Rights Act.

46.     Here Defendants' failure to make sure that accessible facilities were available to, and ready to be used by, Plaintiff was/is a violation of law.

47.     Plaintiff would like to continue to frequent the Property, which is close to his home.  However, he is deterred from doing so because he has been discriminated against and is aware of accessibility barriers at the Property.

48.     Among the remedies sought, Plaintiff seeks an injunction order requiring compliance with federal and state disability access laws, and remediation of the existing access violations (i.e., removal of the existing barriers) at the Property.

## V. SECOND CAUSE OF ACTION:  VIOLATION OF THE

## UNRUH CIVIL RIGHTS ACT

### (Cal. Civ. Code §§ 51-53)

(Against All Defendants)

49.     Plaintiff repleads and incorporates by reference, as though fully set forth herein, the allegations contained in all prior paragraphs of this complaint.

50.     California Civil Code § 51 states, in part:  "All persons within the jurisdictions of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every

kind whatsoever."

51.     California Civil Code § 51 also states, in part:  "No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person."

52.     California Civil Code § 51(f) specifically incorporates, by reference, an individual's rights under the ADA into the Unruh Civil Rights Act (UCRA).

53.     The UCRA also provides that a violation of the ADA, or California state accessibility regulations, is a violation of the UCRA.  Cal. Civ. Code § 51(f); *see Arnold v. United Artists Theatre Circuit, Inc.*, 866 F. Supp. 433, 439 (N.D. Cal. 1994).

54.     Defendants' above-mentioned acts and omissions have violated the UCRA by denying Plaintiff his rights to full and equal use of the accommodations, advantages, facilities, privileges, and services they offer, on the basis of Plaintiff's disability.

55.     Defendants' above-mentioned acts and omissions have also violated the UCRA by denying Plaintiff his rights to equal access pursuant to the ADA; and, thus, Defendants are liable for damages.  *See* Cal. Civ. Code § 51(f), 52(a).

56.     Because Defendants' violation of the UCRA resulted in difficulty, discomfort, and/or embarrassment for Plaintiff, Defendants are each also responsible for statutory damages.  *See* Cal. Civ. Code § 55.56(a), (c).

1     //

2     //

3     //

4     //

5     //

6     //

7     //

8     //

9     //

10    //

11    //

12    //

13    //

14    //

15    //

16    //

17    //

18    //

19    //

20    //

21    //

22    //

23    //

24    //

25    //

26    //

27

28

57.     Plaintiff was (actually) damaged by Defendants' wrongful conduct. He seeks actual damages, and statutory minimum damages of four thousand dollars ($4,000) for each offense (i.e., for each occasion that Plaintiff was denied full and equal access).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants, as follows:

1.  For injunctive relief compelling Defendants to comply with the Americans with Disabilities Act and the Unruh Civil Rights Act.  Note: Plaintiff is not invoking section 55 of the California Civil Code and is not seeking injunctive relief under the Disabled Persons Act.

2.  Damages under the Unruh Civil Rights Act, which provides for actual damages and statutory minimum damages of $4,000 per each offense.

3.  Reasonable attorney fees, litigation expenses, and costs of suit, pursuant to 42 U.S.C. § 12205, and Cal. Civ. Code § 52.

## DEMAND

Plaintiff demands a bench trial on all issues so triable.


Dated: May 1, 2022          THE LAW OFFICE OF HAKIMI & SHAHRIARI

                            By:    /s/ Peter Shahriari
                                   PETER SHAHRIARI, ESQ.
                                   Attorney for Plaintiff Todd Williamson